# THE UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:10CR405 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CHRISTOPHER UGOCHUKWU, | ) | |
| | ) | (Resolves Doc. 322) |
| Defendant. | ) | |

This matter comes before the Court on a motion seeking a *Franks* hearing and a motion to suppress filed by Defendant Christopher Ugochukwu.  The two-part motion is DENIED.

**I. Background Facts**

Ugochukwu was indicted along with 23 co-defendants on September 16, 2010.  The 137-page indictment describes several intertwined heroin distribution conspiracies.  The investigation leading to the indictment included numerous search warrants and wiretaps.  On February 1, 2011, Ugochukwu moved to suppress certain evidence found during the execution of a search warrant and certain evidence obtained through the wiretaps.  On February 22, 2011, the Government responded in opposition to the motion.  Thereafter, on March 29, 2011, with leave of Court, the Government supplemented its response with two additional documents.  The Court now resolves the pending motion.

**II. Legal Standard**

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The test for

probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

An affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991).  However, probable cause does require a "substantial basis" for concluding that evidence of a crime will be found at the location to be searched. *Id*. (citing *Gates*, 462 U.S. at 238). The issuing court's probable cause determination is entitled to "great deference" by reviewing courts.  *United States v. Leon*, 468 U.S. 897, 914 (1984).  A prior court's determination of probable cause, therefore, should be upheld so long as the magistrate had a "substantial basis" for concluding that the search would lead to evidence of a crime.  *United States v. Pelham*, 801 F.2d 875, 877-78 (6th Cir. 1986).

**III. Suppression**

**A. Wiretaps**

Ugochukwu seeks suppression of certain evidence obtained through wiretaps on several grounds.  The Court will separately address each of his arguments.

Prior to addressing each of Ugochukwu's argument, it is necessary to first provide a factual background to place the arguments in context.  On March 18, 2010, the Government sought and received authority to intercept the cell phone of Christopher Sapp.  The application included details from a more-than-one-year long investigation.  The investigation was designed

2

to put an end to Sapp's drug trafficking ring and identify all of his suppliers. The application included details about Sapp's prior arrest following a controlled buy and detailed Sapp's cooperation in identifying one of his suppliers. The application also indicated that despite Sapp's initial cooperation, he continued to traffic heroin. The application was granted, and the initial 30-day period of surveillance indicated a core group of individuals that the Government believed to be suppliers and/or customers of Sapp. These conversations demonstrated that Sapp was storing heroin at the homes of co-defendants Roosevelt Washington and Cherrae Jentgens. They further revealed that Sapp was most likely being supplied heroin by co-defendant Richard Lanier. This view was reinforced by the fact that no conversations between Sapp and his Chicago heroin supplier were heard during this time frame, yet Sapp continued to sell heroin on a regular basis.

Based upon the above-described interceptions, the Government sought and received on May 6, 2010 permission to intercept calls on Lanier's cell and landline phones. This surveillance revealed numerous conversations between Lanier and Sapp about drug transactions – activities that were later verified by surveillance. In addition, the surveillance revealed Lanier routinely contacted co-defendants John Dukes and Michelle Barrett, both of whom had histories of drug offenses. Eventually, agents came to learn of Lanier's communications and drug activities involving co-defendant Bryant Johnson. In turn, an application to intercept Johnson's cell phone was made and granted.

During the time frame of these wiretaps, numerous search warrants were executed on suspected stash houses. These searches resulted in the seizures of heroin, firearms, ammunition, drug trafficking paraphernalia, and over $1.6 million in cash. Thereafter, during July 2010, Johnson, Lanier, and Ugochukwu were arrested. Several hours after Ugochukwu was arrested,

3

authorities searched his apartment. The search revealed roughly two kilograms of heroin, blenders, a food saver, a money counter, a kilo press, a scale, and over $5,000 in cash. Ugochukwu now challenges numerous aspects of the investigation that ultimately led to his indictment.

### 1. Minimization

Ugochukwu first contends that the information learned through wiretap conversations that included him must be suppressed because the Government's minimization requirements were not satisfied. The Court disagrees.

Title III requires that the Government's surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). To warrant suppression for insufficient minimization, Ugochukwu must show that "monitoring agents exhibited a high disregard for [his] privacy rights or that they did not do all they reasonably could to avoid unnecessary intrusions." *United States v. Feldman*, 606 F.2d 673, 679 (6th Cir. 1979).

> The Sixth Circuit has held as follows with respect to minimization
>
> It is not enough for the defendants to identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent conversations which developed over the period of the wiretap.

*United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985) (quotation and citation omitted). In *Lawson*, the defendants "presented 117 of 9,000 interceptions as 'samples' regarding the lack of minimization." *Id.* The Court therein found that the defendants had failed to present a *prima facie* pattern demonstrating a lack of minimization.

Ugochukwu presents even less in his argument than the unsuccessful movants in *Lawson*. The sum total of Ugochukwu's argument is one sentence in his motion: "Instead, law

4

enforcement officers recorded a number of conversations, including personal, non-criminal matters." Ugochukwu fails to identify these conversations, their contents, or the frequency of their interception. Accordingly, he falls woefully short of his burden to demonstrate a pattern of interception of innocent conversations.

### 2. Necessity

Ugochukwu argues that the wiretaps must be suppressed because the Government did not comply with the necessity requirement contained in 18 U.S.C. § 2518. The Court finds no merit in this argument.

18 U.S.C. 2518(1)(c) requires that every application for a wiretap must include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]

In order to grant the application, the issuing judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" 18 U.S.C. § 2518(3)(c). Ugochukwu contends that the Government made overly broad, conclusory statements in its application that were insufficient to satisfy this requirement.

The Sixth Circuit has previously discussed the necessity requirement and noted as follows:

> In endeavoring to secure a wiretap warrant, the government need not prove the impossibility of other means of obtaining information. Instead, the necessity provisions merely require that law enforcement officials "give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985). This precise information was provided in the instant case. *See United States v. Cooper*, 868 F.2d 1505, 1508-09 (6th Cir. 1989) (holding that undercover operations including controlled purchases, consensual telephone monitoring, and physical surveillance established that

5

> "normal investigative procedures" had been extensively conducted, and that the requested interception of wire and oral communications was not "employed as the initial step in criminal investigation").
>
> Furthermore, the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance. We have previously recognized that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977) (quoting *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975)). The evidence reflects that various members of the drug conspiracy facilitated the criminal enterprise through multiple telephone conversations from several locations. In addition, it does not appear that the government could have uncovered the full scope of the conspiracy, especially not in a relatively safe manner, without the wiretaps. By the time the electronic surveillance began in this case, the investigation had been going on for approximately three years. Yet, the surveillance permitted authorities to discover numerous additional participants in this far-reaching conspiracy.

*United States v. Stewart*, 306 F.3d 295, 305-06 (6th Cir. 2002).

Initially, the Court notes that Ugochukwu's motion is also deficient with respect to this argument. While arguing that the necessity requirement was not satisfied, Ugochukwu argues as follows:

> [T]he affidavits only make[] general allegations that would be true in most narcotics investigations. Furthermore, the affidavits contain[] boilerplate conclusions that merely describe the inherent limitations of normal investigative procedures.

Doc. 322 at 12. Ugochukwu makes no attempt to identify the particular affidavit or affidavits that he finds deficient. Moreover, he fails to even identify the paragraphs that he feels contain these "boilerplate conclusions." As such, he has again fallen well short of meeting his burden of demonstrating a statutory violation.

The Court also notes that despite the deficiencies in the motion, the Government has offered argument on each of the separate applications. In addition, the Court has also fully reviewed each application at issue. Whether the necessity requirement was satisfied is not a

6

close call.  Each application discusses the use of confidential sources and the failure of those sources to assist in furthering the investigation.  The applications also discuss that a canvass of all law enforcement agencies did not generate new confidential sources that would be useful.  Moreover, the applications make clear that prior efforts to use Sapp as a source had been somewhat helpful, but ultimately law enforcement learned that Sapp had never been entirely forthright during his cooperation.  The applications also set forth the past failures of surveillance, the inability to infiltrate the drug trafficking organization, and the fact that some conspirators were utilizing counter-surveillance techniques.  Thus, contrary to Ugochukwu's unsupported allegations, the applications contained specific and detailed explanations of the need to resort to wiretaps. This portion of Ugochukwu's motion to suppress lacks merit.

    **B. Residence Search**

Ugochukwu also seeks to suppress the evidence found during the search of his residence. Similar to his above arguments, the Court will separately address each argument raised in the motion.

    **1. Search Timing**

Ugochukwu first contends that his residence was searched prior to the issuance of the warrant.  In support, Ugochukwu points to the date on the warrant, July 29, 2010, and the fact that his residence was searched on July 27, 2010.  The record before the Court, however, is clear that the warrant was issued on July 27, 2010, prior to any search, and that the date placed on the warrant is simply a clerical error.  This fact is made clear in several ways.  First, a July 28, 2010 warrant application for Ugochukwu's electronic media was signed by the same Magistrate Judge and explicitly references the July 27, 2010 search of the home.  This Magistrate Judge would not have signed the subsequent warrant without having first authorized the initial search.  Moreover,

7

the Government has supplied a certified copy of the docket that reflects that the warrant was issued on July 27, 2010. Doc. 458-2 at 1-2. Accordingly, this argument lacks merit.

### 2. Nexus

Ugochukwu next asserts that the warrant was not supported by probable cause because it failed to establish a nexus between the alleged illegal activity and his residence. The Court disagrees.

In determining whether there is probable cause to conduct a search, a magistrate issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found *in a particular place*." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (citing *Gates*, 462 U.S. at 238-39) (emphasis added). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (internal citations omitted).

As a result, affidavits supporting a search warrant must establish the nexus between the place to be searched and probable evidence of criminal activity, not just that "the owner of property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006). Sixth Circuit precedents have established that a "magistrate may infer a nexus between a suspect and his residence, depending upon the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (citations and quotations omitted). "[I]n the case of drug dealers, evidence is likely to

8

be found where the dealers live[.]" *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (quotation and citation omitted).

Despite the above precedents, Ugochukwu has urged the Court to rely on *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005). However, *Frazier*'s facts are distinguishable from the instant matter. The *Frazier* Court held as follows:

> None of these cases, however, supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home. Where, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence.

*Id.* at 532. Unlike the warrant application in *Frazier*, the affidavit herein does not rely on uncorroborated testimony from unproven confidential informants. Instead, the affidavit included a detailed description of the past investigation of Ugochukwu, detailed two items found in plain view during his arrest, a food sealer and a blender, and listed the affiants past experience in dealing with drug dealers.

The warrant application and its attachments describe in lengthy detail the investigation into Ugochukwu's drug trafficking. Those materials provided substantial evidence that Ugochukwu was engaged in heroin trafficking. Given the nature and scope of the drug conspiracy detailed in those attachments, the magistrate had a substantial basis to find that probable cause existed to search Ugochukwu's home. *See United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("Because the quantity of drugs and the repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence.")

### 3. Alleged False Statements

Ugochukwu also requests a *Franks* hearing based upon his assertion that the search warrant affidavit contained statements that were made in reckless disregard of the truth. The Court likewise finds no merit in this argument.

The *Franks* Court set out the standard a defendant must satisfy to warrant a hearing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978). This high initial burden is designed to prevent defendants from abusing the process and to insure that frivolous claims do not result in mini-trials. *Id.* at 170. "Where a defendant makes a sufficient showing to obtain a *Franks* hearing, and is able to show by a preponderance of evidence at the hearing that the affiant lied or acted in reckless disregard of the truth with respect to certain portions of the affidavit, the trial judge is expected to excise those portions and proceed to determine whether the balance of the affidavit is sufficient to support a determination of probable cause." *United States v. Palladino*, 28 F.3d 1214, at *2 (6th Cir. July 13, 1994) (table) (footnotes omitted).

In his motion, Ugochukwu does not identify any false statements. Instead, Ugochukwu takes issue with the fact that the affiant interpreted several of the wiretap conversations and concluded that the participants were using a code that referenced drug activity. In that respect,

an issuing judge "may consider an agent's training and experience to offer opinions as to methods utilized by drug traffickers and, based on the same, consider an agent's interpretation of code words and language in determining whether a probable cause exists to authorize a search warrant." *United States v. Flores*, 2007 WL 2904109, at *39 (N.D.Ga. Sept. 27, 2007) (citing *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006)); *see also United States v. Maddox*, 2010 WL 3210743, at *2 (E.D.Tenn. June 22, 2010) (finding that it was appropriate for an issuing judge to rely upon an experience agent to interpret drug dealer code language).

Much like his earlier arguments, Ugochukwu's argument here is conclusory and unsupported by any facts. Instead, Ugochukwu asserts that the statements in the affidavit were false without any support for his argument. Ugochukwu's argument is summarized best as follows: there was no overt discussion of heroin or heroin distribution on the wiretaps, therefore any interpretation that indicated this activity was occurring was made with reckless disregard for the truth. This argument ignores all of the other evidence gathered during the more-than-one-year investigation and blatantly ignores the fact that drug dealers routinely speak in code to evade police detection. Accordingly, Ugochukwu has again fallen well short of his burden and no *Franks* hearing is warranted based upon the argument presented to the Court.

### 4. Totality of the Circumstances

Ugochukwu's conclusion that there was no probable cause to support the search of his apartment is dependent upon this Court excluding the wiretaps and the alleged false statements in the affidavit. Having concluded that there was no merit in the arguments to suppress those items, it follows that Ugochukwu's argument here lacks merit as well.

The Court notes that the search warrant application contained well more than sufficient information to form probable cause. The affidavit details the lengthy investigation into a drug

11

trafficking organization in the Cleveland, Ohio area. Moreover, prior to the agent interpreting the coded language in the wiretaps, the magistrate was informed of the agent's prior, significant experience in narcotics when he swore as follows: "Based on the above training and experience, your Affiant is familiar with the *modus operandi* of persons involved in the illegal distribution of controlled substances, as well as the terminology used by persons involved in the illegal distribution of controlled substances." Furthermore, Ugochukwu cannot dispute that many of the interpreted conversations were made with *known* heroin dealers. Accordingly, the interpretations were that much more reasonable when that fact was presented in the affidavit.

The application also detailed the investigation of Christopher Sapp, his phone calls to Lanier, the searches of the stash houses, and the additional wiretap information learned from other co-defendants. The affidavit indicated that a food sealer and blender were found in plain view during Ugochukwu's arrest. While Ugochukwu attempts to downplay the significance of these items, claiming them to be ordinary household items, he ignores the context surrounding them. Standing alone, these items would certainly not be viewed as evidence of criminal activity. However, when coupled with what was learned through the investigation and wiretaps, the items take on a different meaning and suggest that drug trafficking was occurring at the residence.

The affidavit and supporting documents presented nearly overwhelming evidence of probable cause. Furthermore, the Court has found no basis to exclude any portion of the affidavit in support of the warrant. Accordingly, Ugochukwu's motion to suppress and motion for a *Franks* hearing is DENIED.

The suppression hearing scheduled for April 6, 2011 is hereby converted to a FINAL PRETRIAL. The parties should be prepared to discuss the upcoming trial in this matter and provide the Court with its expected duration.

IT IS SO ORDERED.

April 1, 2011  /s/ Judge John R. Adams
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT