ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.    1:10CR405 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| CHRISTOPHER UGOCHUKWU, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I.  Introduction**

On September 16, 2010, Defendant Christopher Ugochukwu was indicted for conspiracy to possess with intent to distribute heroin, possession with intent to distribute heroin, and use of a telephone to facilitate a drug trafficking offense. On April 11, 2011, the matter proceeded to a jury trial. On April 15, 2011, the jury found Defendant guilty on all three counts. On August 19, 2011, the Court held a sentencing hearing and entertained argument from counsel. The Court then sentenced Defendant to a total term of incarceration of 320 months. This memorandum will serve to supplement the Court's oral pronouncement of sentence.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines."). In so doing, the Court must determine the offense level for the crimes for which the defendant has

been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

## III. Advisory Guideline Calculations

Defendant disputes multiple aspects of the Court's calculation of his advisory guideline range. The Court will separately explain its ruling on each challenge. However, the Court will first detail its Guideline calculation.

Defendant based offense level arises under U.S.S.G. § 2D1.1. As the conspiracy involved more than 10 kilograms of heroin but less than 30 kilograms, Defendant's base offense level is a 36. U.S.S.G. § 2D1.1(c)(2). A four-level increase is appropriate because Defendant was a leader or organizer of five or more persons in the conspiracy. U.S.S.G. § 3B1.1(a). Accordingly, Defendant's final offense level is 40. With a criminal history Category I,

Defendant's advisory guideline range is 292 to 365 months.

Drug Quantity and Leader / Organizer

Defendant contends that the Government failed to prove any amount of heroin should be attributed to him and that therefore the Court's application of U.S.S.G. § 2D1.1(c)(2) was in error. The Court finds no merit in this argument.

U.S.S.G. § 2D1.1(c)(2) provides for an offense level 36 if the offense involved more than 10 kilograms but less than 30 kilograms of heroin.  Furthermore, as this matter included a conspiracy conviction, U.S.S.G. § 1B1.3(a)(1)(B) provides that the base offense level shall be determined on the basis of Defendant's acts and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

In this matter, there is no question that the Government's calculation of 17 kilograms of heroin is exceedingly conservative.  In arriving at this quantity, the Government included only those drugs actually seized during the investigation.  There is no question from the evidence that significantly more heroin was trafficked and never confiscated.

Defendant's argument regarding the quantity of heroin attributable to him mimics his argument regarding whether he was a leader or organizer.  The Court fully addresses that argument below.  However, it is important to note that Defendant does not challenge the Government's assertion that 17 kilograms of heroin were ultimately seized by law enforcement during investigation of this conspiracy.

Defendant contends that the full 17 kilograms cannot be attributed to him because he did not have direct contact with each member of the conspiracy.  For example, 12 kilograms were recovered from co-defendant Bryant Johnson.  Defendant claims that Johnson purchased heroin

3

from multiple suppliers and therefore the heroin that was seized cannot be traced back to him. In that regard, Defendant raises a substantially similar argument regarding the application of U.S.S.G. § 3B1.1(a) which provides that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Specifically, Defendant asserts that since he had no direct contact with many of the members of the conspiracy, the Government cannot prove that he was a leader or organizer of five or more individuals. Both of these similar arguments lack any merit.

Application Note 4 to § 3B1.1 describes the factors this Court must consider in applying this enhancement.

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

Reviewing these factors compels application of the enhancement.

Defendant supplied heroin to co-defendants Johnson and Richard Lanier. In turn, those two co-defendants utilized co-defendants John Dukes, Eric Rosser, Michelle Barrett, Frances Southall, Jerome Talbott, Willie Arney, Kenneth Cooper, Preston Tucker, and Lennie Williams to further distribute the heroin. In addition, Lanier testified that he on occasion supplied heroin to co-defendant Christopher Sapp. Sapp then utilized co-defendants James Mayo, Daesean Wirt, Hector Escalera, Michael Young, Desiree Tanner, Johnny Williams, Ronald Hill, Cherrae Jentgens, and Roosevelt Washington to further distribute that heroin.

Defendant's argument in this regard is without merit.  Application note 2 to U.S.S.G. § 3B1.1(a) provides as follows:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more other participants*. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

(emphasis added).  "The defendant need not have directed the activities of five or more persons; rather, five persons must have been involved in the conspiracy."  *United States v. Stewart*, 306 F.3d 295, 316 n.11 (6th Cir. 2002).   There is simply no doubt that Defendant supervised Lanier and Johnson.  Their testimony at trial made it clear that Defendant was the top of the conspiracy and that Defendant controlled a vast majority of the heroin that made its way to street-level dealers.  The fact that Defendant had no direct contact with these dealers is irrelevant to the application of the leader / organizer enhancement.

It is clear from the evidence introduced at trial that Defendant facilitated the introduction of heroin into this country through a smuggling operation.   Defendant would visit Nigeria whenever the need arose for further heroin within the conspiracy.  Thus, a bulk of the planning and organizing of the most vital part of the conspiracy, the heroin supply, was conducted solely by Defendant.  As such, the enhancement is appropriate.

Finally, any argument that Defendant was in merely a buyer/seller relationship with Lanier and Johnson must be rejected as unsupported by the evidence before the Court.  For just one example, Lanier and Johnson used co-defendant Arney as a "tester" of the heroin.  If the heroin was not of a particular quality, it was returned to Defendant.  This hardly describes a typical

5

buyer/seller relationship in the world of drug trafficking. Rather, it evidences Defendant's direct knowledge of conspiracy and the methods that Lanier and Johnson were using to maintain the conspiracy. To accept Defendant's argument, the Court would have to believe he was simple seller of heroin with a liberal return policy. The Court declines to accept such an argument.

Based upon the above, Defendant's challenges to the Court's advisory guideline calculation lack merit. As such, Defendant's final advisory guideline range is 292 to 365 months.

**IV.  Kinds of Sentences Available**

The final calculated advisory guideline range of imprisonment is 292 to 365 months. The statutory maximum for counts 1 and 13 is life in prison with a ten year mandatory minimum. The statutory maximum for count 4 is four years in prison. The maximum fine Counts 1 and 13 is $4,000,000 and the maximum fine for Count 4 is $250,000. Supervised release of up to five years may also be imposed.

**VI. § 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. Based upon those factors, the Court finds that a sentence at the mid-range advisory guideline range is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The Court also reviewed the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant; and c) to provide the

Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a) factors. This memorandum will serve only to supplement that discussion.

The Court fully discussed the nature and scope of the conspiracy in this matter. Moreover, the Court was able to observe firsthand the effects of the conspiracy. Many of the lower level defendants appeared before the Court for arraignment still suffering the effects of heroin withdrawal. Those lower level dealers distributed heroin solely to feed their own habit, and the effects were debilitating. Given the quantity of drugs that consistently moved through the conspiracy, these debilitating effects were widespread throughout the community.

Moreover, the Court cannot overstate the growing dangers associated with heroin. Drug poisoning deaths in Ohio increased by more than 350% between 1999 and 2011. Since 2005, the amount of heroin seized in the Northern District of Ohio has grown by 275%. The Court's experience has also shown that heroin does not discriminate. Its victims span gender, race, age, and economic background. And its debilitating effects are the same across all those demographics.

The Government accurately described the conspiracy as placing poison into the community, and this was not a matter of selling heroin on a few simple occasions. Rather, Defendant routinely placed this poison into the community, selling kilogram after kilogram of heroin, knowing full well that the poison was being spread throughout the very community that he was living in. Those facts and those described by the Court during the sentencing hearing warrant a mid-range guideline sentence of 320 months.

**VII. Departure and Variance**

Defendant argued for both a downward departure and a downward variance. Both requests lack merit.

First, Defendant argues that a departure is warranted because of his lack of any prior criminal activity. Initially, the Court notes that this fact is taken into account in calculating Defendant's criminal history category. Moreover, while the Court has declined to use relevant conduct to further enhance Defendant's advisory guideline range, there is little doubt that the Government produced sufficient evidence to demonstrate that Defendant's drug trafficking was not aberrant behavior. Rather, the evidence suggests that Defendant has been engaged in this same behavior for a lengthy period of time. Accordingly, no downward departure is warranted.

Defendant also suggests that a downward variance is warranted because he will be subject to deportation following the completion of any term of incarceration. Defendant offered no law to suggest that this is a proper factor for the Court to consider. Moreover, the Court has found no law to suggest that this is a proper factor. Perhaps more importantly, were this Court to consider this factor, significant Equal Protection issues would arise. In effect, Defendant would receive a substantial benefit by virtue of being a non-U.S. citizen. The Court declines to vary for such an impermissible and legally unjustified reason.

**VII. Sentencing Disparities**

The Court has identified no sentencing disparities for similarly situated defendants. In fact, the Court thoroughly reviewed similar defendants within this conspiracy. After fully considering those sentences that have been imposed and Defendant's conduct, the Court finds no disparities.

**VIII. Conclusion**

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Christopher Ugochukwu is hereby committed to the Bureau of Prisons for an aggregate term of 320 months. The Court stated the remaining terms of Ugochukwu's sentence on the record and in its journal entry of conviction. Accordingly, it declines to reiterate those terms herein.

IT IS SO ORDERED.


| September 9, 2011 | /s/John R. Adams |
|---|---|
| Date | JOHN R. ADAMS |
| | UNITED STATES DISTRICT JUDGE |