UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:10CR405 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| CHRISTOPHER UGOCHUKWU, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Christopher Ugochukwu's motion for a new trial. The motion is DENIED.

Defendant's jury trial was conducted on April 11, 2011 through April 15, 2011. On April 15, 2011, the jury convicted Defendant on Counts 1, 13, and 24 as charged in the indictment. On August 19, 2011, Defendant was sentenced to 320 months incarceration. On August 21, 2011, Defendant moved for a new trial. The Government filed its opposition on October 18, 2011. After granting Defendant a thirty-day extension to file a reply, no reply was filed. The Court now resolves the motion.

At all relevant times, Rule 33 specified that "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," and that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Fed.R.Crim.P. 33(b).

> However, Rule 33 must be read in conjunction with Federal Rule of Criminal Procedure 45, which provides that "[w]hen an act must or may be done within a specified period, the court ... may extend the time ... on a party's motion made ... after the time expires if the party failed to act because of excusable neglect." Fed.R.Crim.P. 45(b). See Advisory Comm. Notes to 2005 Amendments of Rule 33

>
> ("[U]nder Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion for new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result of excusable neglect."); *United States v. Robinson*, 430 F.3d 537, 541 (2d Cir. 2005) ("The time limitations specified in Rule 33 are read in conjunction with Rule 45, which establishes how to compute and extend time.").

*United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010).

There is no dispute that a large portion of Defendant's motion is untimely on its face. Defendant, however, has argued that he has met his burden to show excusable neglect for the untimely portion of the motion. In resolving that issue, the Court is guided by the factors discussed in *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380 (1993), and applied to Rule 33 by *Munoz*. Those factors include:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Munoz*, 605 F.3d at 368 (citing *Pioneer*, 507 U.S. at 395).

The Court agrees with the arguments set forth in the Government's opposition to the motion for new trial. Defendant has fallen well short of his burden to demonstrate excusable neglect. The motion was filed nearly five months late – and the record reflects that Defendant actively sought out numerous new counsel before finally finding counsel that would file the instant motion. No legitimate reason was offered for the delay. The delay was entirely within Defendant's control, and there is nothing to suggest that Defendant was acting in good faith. Instead, as will be demonstrated throughout this order, it is apparent that Defendant had to spend five months in order to find counsel that would file this motion as the motion itself borders on frivolous. Accordingly, those portions of the motion for new trial that are not premised upon

newly discovered evidence are untimely. However, out of an abundance of caution, the Court will still address those arguments on the merits.

## I. GENERAL STANDARD

Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The rule "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). However, "it is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *Munoz*, 605 F.3d at 373.

Before undertaking to review the individual errors alleged by Defendant, the Court must note that the sheer number of errors alleged is breathtaking. In claiming ineffective assistance of counsel, Defendant asserts dozens of alleged deficiencies by his counsel, rarely offering any argument in support of the claim that the acts described were in fact deficient. Accordingly, to the extent that a specific error is not addressed herein, that error is found to lack merit. The lack of discussion of such an error is the result of either 1) a complete lack of argument from Defendant, 2) a complete lack of factual support for such an argument, or 3) the unorganized and difficult-to-follow motion pending before the Court.

1. Constructive Amendment of the Indictment

Defendant first contends that a constructive amendment of the indictment occurred with respect to Count 24 and that he is factually innocent of the actual count alleged in the indictment. The Court finds no merit in this contention.

A constructive amendment occurs
when the terms of the indictment are in effect altered by the presentation of

> evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Siemaszko*, 612 F.3d 450, 469–70 (6th Cir. 2010) (internal quotation marks omitted). Defendant "bears the burden of establishing that a constructive amendment has occurred." *See id*. at 469. "[C]onstructive amendments are considered per se prejudicial and are reversible error." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).

Defendant's sole argument here rests upon a faulty factual premise – namely that the count does not include "on or about" language. In pertinent part, Count 24 reads as follows: " On or about the dates and times listed below" the defendants used the telephone to facilitate a felony. Count 24 then goes on to name Defendant and a co-defendant, Richard Lanier, and states the date of the call to be May 12, 2010, and the time of the call to be 9:47 p.m. It is undisputed that no 9:47 p.m. call exists. Instead, a 9:43 a.m. call exists on May 12, 2010. The Government introduced this call into evidence and properly identified the time as 9:43 a.m. Given the "on or about" language in the indictment, Defendant cannot maintain any argument that he is factually innocent of Count 24. Moreover, as the Government identified the specific tape that supported Count 24 *before trial* to defense counsel, there is simply no argument that Defendant was prejudiced by the typographical error in the indictment.

The jury was properly charged with the "on or about" language, and the evidence amply supports that "on or about" May 12, 2012, at 9:47 p.m., Defendant committed the crime alleged. The fact that the actual crime occurred roughly 12 hours earlier did not result in a constructive amendment. This alleged error lacks merit.

2. <u>Dual Role</u>

Defendant next contends that the Court erred by not giving a dual role instruction to the

jury regarding Detective Clark's testimony.  However, the Court specifically instructed the jury about witnesses giving both fact and opinion testimony, and directly referenced Detective Clark during those instructions.  Doc. 631 at 848-49.  Thus, Defendant's claim of error is belied by the actual record in this matter.

   3. Detective Clark as an Expert

Defendant next asserts that this Court erred by allowing Detective Clark to testify as an expert.  Fed. R. Evid. 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Defendant contends that Detective Clark "put his own spin" on record conversations, thereby overstepping his bounds as an expert.  Defendant does not take the time to cite to any specific testimony offered by Clark that resulted in prejudicial error.  Instead, he offers a conclusory statement that the testimony was not of the category typically allowed by courts.  The Government's response, at pages 28 and 29, has more than adequately detailed the subject of Clark's testimony that is well within the bounds of proper expert testimony.  Moreover, the Government has properly highlighted that Clark's specialized knowledge has never been challenged by Defendant – not at trial, nor in the current motion.  In short, this alleged error lacks any specific argument and is fully rebutted by the trial record.

4. Drug Ledgers

Defendant next asserts that this Court erred in admitting the drug ledgers.  Again, Defendant's argument simply ignores the trial testimony in this matter.  Defendant primarily contends that it was error to introduce the drug ledgers because no witness "adopted the ledgers as their own."   In so doing, Defendant ignores that the ledgers were taken from locations owned and controlled by co-defendant Lanier and that Lanier openly testified about his role in the conspiracy. The record is clear that the ledgers were highly probative of the conspiracy and they were properly admitted.[1]

5. Count 13

In this alleged error, it is unclear whether Defendant is claiming insufficiency of the evidence or raising a manifest weight challenge to the evidence.  Defendant, however, contends that the Government failed to prove knowing possession and intent to distribute.  It is difficult for the Court to conceive *how* this argument could be raised in the face of the evidence at trial. Roughly two kilograms of heroin were found in Defendant's apartment.  A kilo press, mannite bars, blenders, a food sealer, and hundreds of international money transfer receipts were found in that apartment.  Moreover, a photograph of Defendant **with the kilo press** was presented to the jury.  There was more than sufficient evidence to prove Count 13 beyond a reasonable doubt.

6. Buyer-Seller Relationship

Defendant next argues that no conspiracy was established, but instead only evidence of a buyer-seller relationship was introduced.  As with nearly every argument contained in this motion, Defendant's argument is wholly unsupported by the actual record in this matter. Evidence of 1) sales of large amounts of heroin, 2) prolonged cooperation between multiple

---

[1] The Court would note that no objection was made to the introduction of these ledgers during trial.

co-defendants, 3) mutual trust between these co-defendants, and 4) sales on a consignment basis were all presented to the jury. Moreover, Defendant possessed nearly two kilograms of heroin – not an amount one could reasonably argue was for personal use. Thus, the record overwhelmingly demonstrates a conspiracy, and contains **no** evidence of a buyer-seller relationship.

   7. Ineffective assistance of counsel

To say that Defendant has utilized the kitchen sink defense in this portion of his motion would be a dramatic understatement. Defendant appears to claim error in every act taken by his counsel and in every aspect in which he allegedly failed to act. The Court now reviews those contentions.

In *Strickland v. Washington*, 466 U.S. 668, 687, 4 (1984), the Supreme Court established the requirements for an ineffective assistance of counsel claim: Defendant must demonstrate both (1) deficient performance by counsel and (2) prejudice resulting from the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance by counsel, Defendant must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. In attempting to establish his attorney's deficient performance, Defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688–687. A reviewing court must ensure "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. The reviewing court must also "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*.

However, an error by counsel, even if professionally unreasonable, does not warrant setting aside judgment in a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691. Defendant must also satisfy the second prong by proving the deficient performance prejudiced the defense. This requires showing counsel's errors were so serious as to deprive Defendant of a fair trial with a reliable result. *Id*. at 687. When a defendant challenges his sentence on the grounds of ineffective assistance of counsel, a court asks whether there is a reasonable probability, absent the errors, that the jury would have reached a different verdict. *See Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).

Defendant claims the following errors in his motion support a claim under *Strickland*:

From this, we go to the voluminous errors committed by Mr. Goldberg:

• Telling Defendant he only faced 20 years in jail, when in fact, he could get life in prison. (See, Ex. B, Letter from Goldberg);

• Failing to request a cautionary instruction with regard to the dual role testimony of Detective Clark who acted as Expert and fact witness;

• Failing to request an "informant Instruction" to the jury, (*See U.S. v. Luck*, 611 F.3d 183 (4th Cir. 2010));

• Failing to object to Detective Clark testifying first, listening in court to all other witnesses testify, then taking the stand for a second time and vouching for the testimony;

• Failing to allow Mr. Ugochukwu to testify on his own behalf after he requested to do so;

• Failing to object when the Government could not produce the phone conversation that was the subject of Count 24 for the jury; and request that all transcribed excerpts of said call be removed from the jury room, as this put an emphasis on Detective Clark's interpretations of said call and the order he placed them in;

- Failing to prepare a defense to the specific charges, when one was available;

- Failing to object to the admittance of evidence that was found at every residence other than Defendant's;

- Failing to request a multiple-conspiracy jury instruction;

- Failing to utilizes a buyer/seller relationship as a defense or requesting a jury instruction based on such a defense;

- Failing to utilize preemptory challenges of relatives of police who presided on Defendant's jury;

- Failing to contact Ben Obifera Ifeka after he called willing to testify or any other witnesses on behalf of Defendant;

- Failing to object to the CD provided to the jury that did not contain the May 12, 2010 call (See Exhibit C); and

- Failing to properly address the corporations of Defendant's and the government's argument that they were straw companies. Counsel never provided a defense to this allegation.

- Failure to address irregularities at trial properly.

- Inadequate examination of character witnesses.

- Failure to adequately cross-examine Richard Lanier and Bryant Johnson.

- Counsel failed to establish any defense whatsoever.

Doc. 637 at 32-34.

While typing up this laundry list of deficiencies, Defendant failed to actually argue the merits of any of the above alleged deficiencies.  In sum total, Defendant claims he offered up contact information for family members that would have assisted in his defense.  He does not allege how these family members would have assisted, the testimony they would have offered, nor how any of this information could have conceivably altered the verdict in this matter.  Moreover, his claims are directly rebutted by the affidavit submitted by his trial counsel.

In that vein, the Government's response has given a detailed opposition to each of the bullet points detailed above.  As Defendant did not undertake the task to analyze and argue each of these bullet points, he has entirely failed to carry his burden to demonstrate error.  Moreover, the Government's response amply demonstrates that Defendant has failed to show both deficient performance and prejudice stemming from the performance.  His ineffective assistance of counsel claims fail as a matter of law.

8. <u>Use of False Testimony</u>

Defendant next asserts that the Government knowingly used false testimony at his trial. In support, Defendant relies upon affidavits from two other inmates, Demetrius Hill and Anthony Jerdine, and a family friend, Benn Obiora Ifeka.  Hill's affidavit claims that on June 13, 2011, he spoke to co-defendant Lanier and Lanier asked him what would happen if he "changed his testimony and told the truth to help someone out."  Hill claims that Lanier went on to state that he lied about Defendant's role in order to "save my partner's connect."  Jerdine claims that he had a conversation with Lanier on November 22, 2010.  Jerdine claims that Lanier specifically asked for assistance in fabricating evidence against Defendant.  Finally, Ifeka claims to have been present when co-defendant Johnson offered Defendant a room in an apartment Johnson owned. Ifeka claims that Johnson told Defendant he would be allowed solely in one room, that all his other apartments were occupied, and that Defendant should keep a padlock on his door to secure his personal belongings.  Defendant claims that these three affidavits constitute newly discovered evidence and demonstrate that the Government relied upon false testimony.  The Court finds no merit in these arguments.

"In making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence (1) was discovered only after trial, (2) could not have been discovered

earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried." *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). It is questionable whether the first two *Barlow* prongs are satisfied by any of the three affidavits. However, overlooking those prongs, the affidavits quite clearly do not satisfy the third and fourth prongs.

First and foremost, the three submitted affidavits are entirely lacking in credibility. For example, Hill claims that Lanier confided in him that he had given false testimony to protect his partner, Johnson. However, Hill claims that this conversation in June of 2011 – months after Johnson had cooperated with the Government against Lanier. It strains credibility to believe that Johnson cooperated immediately, that the Government made his plea agreement publicly available to encourage Lanier to cooperate, and that Lanier then told Hill he fabricated evidence to somehow protect Johnson. Moreover, the Government presented evidence in its response that Lanier was in protective custody on the date this interaction occurred, while Hill was not.[2] Thus, again, it is difficult to imagine how Hill had a thirty to forty minute conversation, about perjury no less, without any interference from the guards assigned to Lanier.

Similarly, Jerdine's affidavit claims that Lanier told him that he was cooperating with the Government and needed to fabricate "hard" evidence against Defendant. Again, however, this conversation allegedly occurred in November of 2010. The record, however, is clear that Lanier never cooperated with the Government until February of 2011.

Furthermore, both affidavits from the inmates consist of nothing more than impeachment material. Both claim that Lanier indicated to them that he was dishonest or seeking to fabricate

---

2 Hill's affidavit acknowledges that Lanier was in the special housing unit at the time of their interaction, but fails to explain how it is that the two of them were left to freely converse for 30 minutes while Hill allegedly waited to make a phone call.

evidence.  Even with a retrial, the jury would be left to view these competing stories.  However, they would also be left with the mountain of physical evidence of the drug conspiracy that was found in Defendant's apartment.

From the Court's review, it certainly appears that Ifeka's affidavit was designed to combat that issue.  Ifeka claims to have been present when Defendant arranged to rent a room from Johnson.  Ifeka claims to have been visiting the U.S. from Nigeria on the precise date that Defendant sought out a room.  Ifeka also claims to distinctly remember Johnson limiting Defendant to use of solely one room in the house and Johnson telling Defendant that he used the rest of the home to entertain women.  Johnson also alleged told Defendant that all his other apartments were rented.

Ifeka's affidavit is strikingly similar in content to the defense raised at trial by Defendant.  Despite all of the physical evidence presented at trial, including Defendant in a photo in the apartment with the kilo press, Defendant insisted through argument that he had no knowledge of the drugs in the apartment.  Ifeka's affidavit would seem to support the contention that Defendant was isolated to one room in the apartment.  However, again, the facts presented at trial demonstrate the complete lack of credibility within the affidavit.  First, the apartment at issue was one of many owned and rented by Johnson.  There is no factual support for the statement that no other apartments were available for rent.  It defies logic that Johnson would rent out a room to an unknown person in an apartment that he was using to conduct a large scale drug conspiracy.  Moreover, it similarly defies logic that Johnson would use this dilapidated apartment to "entertain women" when he owned a million-dollar home not far away.  Additionally, the lease agreement between Johnson and Defendant was for $600 per month and never hinted at this "one room" arrangement.  Indeed, it would have been a grossly overpriced room for that price.  Finally, when

the apartment was searched, the sole identifying information in the apartment belonged to Defendant. There were no documents containing Johnson's identifying information within the apartment.

Accordingly, at best, the three affidavits above could be utilized as impeaching materials. Having presided over the trial in this matter, this additional information would have no likelihood of altering the guilty verdicts reached by the jury in this matter. Accordingly, they do not provide a basis for ordering a new trial.

Finally, Defendant attempts to chart out what he believes to be "undeniably false" testimony given by co-defendant Johnson. The chart has two columns labeled "Bryant Johnson's statements" and "Why Johnson's witness testimony is false." However, the second column does not, in any manner, demonstrate false testimony. For example, Johnson testified that his drug proceeds were located inside a tool shed. Defendant claims that this was demonstrably false because Johnson owned the apartment building and consented to a search of the tool shed. It is entirely unclear how Johnson's ownership or consent to search somehow made his statement false. In fact, the recovery of drug proceeds from the tool shed only served to demonstrate that Johnson's testimony was truthful. Later, Johnson testified that he sold to four customers. Defendant claims this was demonstrably false because none of the customers were arrested. A vast majority of the chart continues in this pattern – matching up to only-somewhat-related pieces of testimony and making unsupported claims that the latter proves the false nature of the first statement. In short, like the remainder of the motion, the charts are short on substance and do not provide any meaningful argument in support of a new trial.

9. Summary

The Court has attempted to address individually each of the arguments raised by Defendant

in his motion.   To the extent that any argument appears to have gone without discussion, the Court formally rejects those arguments.   There was overwhelming evidence of Defendant's guilt introduced at trial and nothing presented in the pending motion supports a new trial in this matter.

The motion for new trial is DENIED.

IT IS SO ORDERED.


December 28, 2012_____                          */s/ John R. Adams*_____
Dated                                                                    JUDGE JOHN R. ADAMS
                                                                                 United States District Judge