UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER UGOCHUKWU, | ) | CASE NO.  1:10CR405 |
| | ) | 1:15CV272 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |
| | ) | |

The instant matter is before the Court upon Petitioner Christopher Ugochukwu's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255.  Doc. 822.  The petition is DENIED.

Initially, the Court notes that Ugochukwu recently moved for leave to file an untimely reply in support of his petition.  Doc. 934.  The petition was filed on February 2, 2015.  The response was filed on July 31, 2015.  Ugochukwu waited more than a year to seek to reply.  In support, Ugochukwu claims that he did not receive a copy of the Government's reply.  The record does not reflect any change of address that was close in time to the filing of the reply, nor doe Ugochukwu claim to have not received any other relevant filing.  Accordingly, the Court finds no merit in his contentions and the untimely request to file a reply is DENIED.

**I. STANDARD OF REVIEW**

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence

1

of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

## II. FACTS AND PROCEDURAL HISTORY

The facts of this matter were detailed in Petitioner's direct appeal of his convictions and are as follows:

> Criminal investigation of this drug conspiracy took place between January 2009 and July 2012. Law enforcement officers initially focused on the drug trafficking activities of Christopher Sapp, who distributed kilograms of heroin in Cleveland that were obtained from his source in Chicago. When that supply dried up, Sapp purchased heroin from Cleveland distributors, Richard Lanier and Bryant Johnson, whose drug source was the defendant. Lanier and Johnson, through their close associates, John Dukes and Eric Rosser, supplied Sapp and other distributors with kilograms of heroin obtained from the defendant.
>
> To investigate the scope of the drug conspiracy, agents utilized various techniques, including GPS devices, surveillance, video, search warrants, and wiretaps on cell phones and landlines. Intercepted calls confirmed that the defendant supplied Lanier and Johnson with kilograms of heroin. During the calls, the defendant and Lanier discussed the quality of the heroin supplied, as well as Lanier's efforts to pay the defendant hundreds of thousands of dollars for heroin that the defendant "fronted" to him for distribution.
>
> On May 24, 2010, agents intercepted a series of telephone calls between Lanier and the defendant that were focused on arranging a meeting the next day. On May 25, agents watched as the defendant drove to one of Lanier's residences, entered briefly, and left carrying a large bag containing $300,000 in drug proceeds. The defendant's departure from the residence was captured on a video, which was played for the jury. Other intercepted calls revealed that Lanier had difficulty paying the defendant for heroin on another occasion because Lanier could not open the safe at one of his stash houses in Cleveland. Lanier assured the defendant that he would pay him after a locksmith opened the safe. Soon thereafter, agents watched a locksmith enter the home of Lanier's sister-in-law. In a subsequent telephone call, Lanier told John Dukes that the locksmith did not appear to observe the cash in the safe.
>
> In late July 2012, agents conducted a series of searches and arrests to take down the drug organization. The first search occurred at one of Lanier's residences in Shaker Heights, Ohio, where agents seized heroin, currency, a money counter, a triple-beam scale, drug ledgers, and evidence of heroin processing. A search of Lanier's stash house on East 110th Street in Cleveland revealed substantial quantities of heroin and evidence of drug cutting and packaging. A search of the safe Lanier kept at his sister-in-law's house on South Lotus Avenue in Cleveland yielded $1.2 million in drug proceeds. Johnson was arrested after he took a large amount of heroin to a stash

> house on Elbon Street in Cleveland. A search there disclosed additional quantities of heroin, cutting agents, scales, sealing devices and packaging materials indicative of heroin processing.
>
> After executing the initial search warrants, the agents traveled to the defendant's Cleveland apartment to arrest him on a federal warrant on July 27, 2010, around 1:50 p.m. The officers knocked and announced their presence, but no one answered the door. After hearing someone running around inside the apartment, the officers broke down the door and found the defendant in the kitchen. A protective sweep verified that the defendant was alone. During the sweep, officers observed a blender, a food sealer, and packaging materials. Based on the items found in plain view and the evidence previously developed confirming the defendant's supplier role in the conspiracy, agents obtained a search warrant for the apartment.
>
> During the search, agents found bags of heroin in finger form (suggesting recent arrival by body courier from overseas), currency, a money counter, a scale, a kilo press, a blender, a food sealer, cutting agents, packaging materials, and receipts for nearly $100,000 in money orders. A kilo press is used to form heroin into a solid chunk after it has been mixed with cutting agents. Officers also found on the defendant's computer a photograph depicting him inside the apartment on May 28, 2010. In the background of the photograph were many of the drug-related items the agents seized from the apartment, including the kilo press.
>
> The district court denied without a hearing the defendant's motion to suppress the evidence seized from his apartment. Thereafter, a jury convicted the defendant of conspiracy with intent to distribute more than one kilogram of a mixture containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846 (count 1); possession with intent to distribute one kilogram or more of a mixture containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (count 13); and use of a telephone to facilitate a felony drug trafficking offense, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) & 846 (count 24).

Doc. 795 at 2-4. This Court then sentenced Petitioner to 320 months incarceration. Petitioner moved for a new trial, and this Court denied that motion as well.

On February 10, 2015, Petitioner filed the instant motion. On July 31, 2015, the Government responded in opposition to the motion. Petitioner did not reply in support of his pending motion. The Court now resolves his arguments.

## II. LAW AND ARGUMENT

### GROUNDS ONE, TWO, FOUR, and FIVE

3

In four of his five grounds for relief, Petitioner asserts that his counsel was ineffective for 1) failing to properly inform him of the applicable statutory and guideline penalties, 2) failing to properly argue a motion to suppress evidence found in Petitioner's apartment, 3) failing appeal on issues related to perjured testimony, and 4) failing to investigate Petitioner's alleged legitimate business interests.

The standard for ineffective assistance of counsel is the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that his counsel's performance was deficient. Id. at 687. Counsel must not merely have erred, but erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id*. Second, Petitioner must show that his counsel's deficient performance actually prejudiced his defense. *Id.* The Court will now examine each of Petitioner's contentions.

Petitioner's first contention – that his counsel failed to advise him of the possible penalties he faced at trial and the possible sentence he would receive – is belied by the record. At the final pretrial in this matter, the Court inquired about negotiations between the parties and defense counsel noted:

> I would just add for the record that Ms. Baeppler and I have been in communication regarding the possible pleas. There's been some exchange of written E-mails between us relative to that. I've discussed those with my client at length. I visited him numerous times at the facility in Youngstown. We've gone over the guideline ramifications of a plea as offered by the government, as well as the potential penalties which would attend a conviction in this matter.
>
> I believe Mr. Ugochukwu is completely aware of the various issues with regard to sentencing. It's my understanding that he wishes to proceed to trial.

Doc. 804 at 6-7. The Court then inquired directly of Petitioner who confirmed the information provided by his counsel. *Id.* This information was reiterated when Petitioner's trial counsel supplied an affidavit that was attached to the Government's opposition to the pending motion:

4

> 7. I discussed the possible sentencing range that defendant was facing. Mr. Ugochuckwu understood that he was likely facing a sentence of more than 20 years if convicted at trial. Additionally, prior to the final pretrial, I showed an email transmission from the Assistant United States Attorney assigned to this matter regarding a likely sentence and the possibility of a plea. Mr. Ugochukwu indicated he was not interested in accepting any plea bargain and indicated so in writing in the e-mail.
>
> 8. I had extensive discussions with Christopher Ugochukwu regarding sentencing. We specifically discussed the sentencing guidelines with sentencing table. Ugochukwu was completely aware of potential sentences. Ugochukwu refused to consider a guilty plea and never authorized me to seek a plea bargain, despite having complete knowledge of guideline sentence possibilities. I had to force plea discussions with him. Ugochukwu would laugh at discussion of pleading to an adjusted level 33 (which could still have been 37 due to role). Ugochukwu was excited about going to trial, as is evidenced by the letter attached hereto as Exhibit 1-B.

Doc. 861-1 at 2. In response, Petitioner offers his wholly unsupported assertions that his counsel did not inform him of the proper guideline range he could face following a conviction and failed to inform him that he faced a mandatory minimum.

Initially, the Court would note that Petitioner has not met his burden of demonstrating that counsel's performance was deficient. The record before the Court indicates that Petitioner was consistently made aware of the penalties he faced following trial and of the penalties offered pursuant to a plea offer from the Government. Accordingly, Petitioner cannot satisfy the first prong of *Strickland*. In addition, the record is replete with examples of Petitioner expressing his desire to go to trial regardless of any plea offer from the Government. As such, he also fails to demonstrate that he would have altered his plea had he received different counsel. Petitioner, therefore, also cannot demonstrate the prejudice required to succeed on his first ground for relief.

In his second argument regarding ineffective assistance of counsel, Petitioner asserts that his counsel failed to properly argue a suppression motion. Specifically, Petitioner contends that his counsel should have argued that agents unlawfully placed a GPS device on his vehicle and unlawfully conducted a protective sweep of his apartment.

5

In raising this claim, Petitioner ignores that his counsel filed a 39-page motion to suppress that requested that this Court exclude both wiretap evidence and the evidence found at Petitioner's apartment. Petitioner now attempts to cherry-pick the arguments that were not contained in that extensive brief to argue that those are the precise arguments that should have been raised. In support, Petitioner asserts that agent "Clark lied at trial about the GSP installation" without any evidentiary support. He similarly contends that agents unlawfully invaded the curtilage of his apartment, again without any evidentiary support. The record, however, reflects that the legality of the search of Petitioner's apartment was fully and fairly litigated in response to the motion to suppress filed by his trial counsel. Accordingly, Petitioner has not shown deficient conduct in his arguments in support of his second ground for relief.

In his fourth ground for relief, Petitioner contends that his counsel should have raised the issue above regarding the placement of the GPS device. Having found that Petitioner's arguments are wholly unsupported by any facts in the record, appellate counsel had no basis to raise a claim that trial counsel was ineffective by failing to raise arguments related to the GPS device placement.

Similarly, the Court finds no support for Petitioner's assertion that his appellate counsel should have argued that the Government knowingly presented perjured testimony. In support, Petitioner claims to have provided Google satellite images that contain information that differ from the testimony offered by Agent Clark. The trial record, however, does not support any claim that Clark offered perjured testimony. Accordingly, there was no basis from the trial record from which an argument could be made that Clark offered perjured testimony. As such, appellate counsel had no basis to raise such a claim and was not deficient.

In his fifth ground for relief, Petitioner asserts that his trial counsel was ineffective for failing to investigate his alleged legitimate business interests. Counsel's affidavit, however, reflects the following:

6

> 9. During the course of my representation, I requested from my client documentation which would evidence ongoing legitimate business operations. I received a document but it was not specific to Cleveland business and could not be authenticated without Tony Ugochukwu's (Mr. Ugochuckwu's brother) or my client's testimony. This document was entitled "SRI Tech Engineers" and it was provided to me by Tony Ugochukwu. I learned from a friend of Mr. Ugochuckwu's that was assisting him, that his brother Tony was not going to travel to the United States (from Nigeria) to testify at trial and authenticate the document. At trial it would be necessary to rely on documents seized by authorities from my client's apartment and the testimony of Lanier to establish legitimate business activity.
>
> …
>
> 12. At one point, Mr. Ugochuckwu reported to me that he was engaged in the business of dealing loose diamonds. I asked for any documentation supporting the same, which he indicated he could not provide. My client also reported to me that he had other businesses in Africa. I again requested documentation to support the same and received one document entitled "SRI Tech Engineers," as referenced above. My client also explained to me that his income came from importing/exporting items to Nigeria. I provided copies of invoices seized from his apartment as evidence of this during the trial of this matter.

Doc. 861-1 at 2. Accordingly, once again, the record belies any claim by Petitioner that his counsel failed to diligently investigate possible defenses on his behalf. As such, his final claim related to ineffective assistance of counsel also lacks merit.

In his sole remaining argument, Petitioner contends in his third ground for relief that his due process rights were violated when the Government intimidated one of his witnesses. Like a majority of Petitioner's motion, this claim is unsupported by any factual evidence in the record. Petitioner claims that his personal assistant, Ms. Moody, was threatened by an unnamed detective. According to Petitioner, Ms. Moody was also offered a bribe of $10,000 from that same detective to testify against Petitioner. Petitioner wholly fails to identify who allegedly engaged in this conduct, and the record does not support his scandalous allegations. Accordingly, this ground for relief also lacks merit.

**III. CONCLUSION**

7

For the foregoing reasons, Petitioner Christopher Ugochukwu's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DENIED.**

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Dated: November 8, 2016                /s/ *John R. Adams*
                                       **JOHN R. ADAMS**
                                       **UNITED STATES DISTRICT JUDGE**