**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR00405 |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| CHRISTOPHER UGOCHUKWU, | ) | |
| Defendant. | ) | |

Pending before this Court is Defendant Christopher Ugochukwu's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. This Court previously denied the motion on the merits and denied Ugochukwu's request for a certificate of appealability. The Sixth Circuit granted a certificate of appealability and remanded the matter to this Court for the limited purpose of holding an evidentiary hearing on Ugochukwu's ineffective assistance of counsel claim. Upon consideration of the evidence and testimony presented at the hearing, Defendant's Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

I. **Factual and Procedural Background**

In 2010, the Government returned a 42-count indictment against Defendant Ugochukwu and 23 other individuals of which three counts related to Ugochukwu. The charges arose out of a drug trafficking conspiracy beginning at least as early as January 1, 2009. Ugochukwu proceeded to trial in the matter, after which a jury found him guilty of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 843(b), and 846. This Court sentenced Ugochukwu to a total of 320 months' imprisonment. The convictions and sentence were subsequently affirmed on appeal. *United States v. Ugochukwu*, 538 F. App'x 674, 676 (6th Cir. 2013). In 2015, Ugochukwu filed a

motion to vacate, set aside, or correct sentence, claiming due process violations and ineffective assistance of counsel. Ugochukwu's claims were dismissed on the merits and this Court further denied Defendant a certificate of appealability.

Ugochukwu subsequently sought a certificate of appealability from Sixth Circuit on several grounds. The Sixth Circuit granted Ugochukwu's request but limited it to his claim that this Court erred by not holding an evidentiary hearing in relation to Defendant's ineffective assistance of counsel argument as it relates to any pretrial plea negotiations. On review, the Circuit reversed this Court's order as it related to Ugochukwu's sole claim before it, remanded the case for an evidentiary hearing on the matter, and ordered this Court to make determinations as to Ugochukwu's financial eligibility and to appoint counsel under Rule 8(c) if necessary. The Court subsequently appointed counsel and scheduled an evidentiary hearing in the matter.

## II. Evidentiary Hearing

An evidentiary hearing in this matter was held on May 29, 2019. Ugochukwu and his trial counsel, attorney Michael Goldberg, were the only witnesses to testify. Attorney Goldberg testified that he had been licensed to practice for roughly thirty years. He first began handling federal criminal cases in 1989 and approximately 98 percent of his practice has been devoted to criminal defense. Goldberg stated that he had handled "close to 300 federal cases" spanning a wide range of criminal law. Goldberg also testified that he had handled several cases of a similar nature, namely cases concerning heroin, before this Court prior his representation of Ugochukwu. Attorney Goldberg noted that he is a CJA panel member and believes himself "conversant" with the federal guidelines. Goldberg's training to that effect consisted of attending the Federal Sentencing Commission seminar "about seven or eight times" in the past 15 years. The seminar deals with "the minutia of the federal guideline application."

With respect to his former client, Goldberg noted that he was retained as counsel for Ugochukwu in August of 2010 by someone other than the defendant following the issuance of the indictment. Goldberg sent Ugochukwu a letter confirming that he was retained in the matter, discussing fees, and highlighting his initial thoughts on potential charges. Goldberg also testified that it is customary for him to include a copy of the statute that he expects charges to be filed under, as well as a copy of the federal sentencing guidelines and sentencing table. The Government presented evidence of the same at the hearing with specific statutes and sentencing guidelines underlined as they pertained to Ugochukwu. See Gov Ex. A. Goldberg testified that he believed he would have made those marks. Ugochukwu testified, however, that he did not receive a copy of the statute, guidelines, sentencing table, or the retainer letter presented by the government, only a different letter related to "the money." Doc. 988 at 73-74.

Ugochukwu claims that Goldberg never discussed the weight of evidence, likelihood of success, or potential measures of success that did not include a win at trial. Doc. 988 at 70. He also claimed that Goldberg "never really discussed the guidelines" with him. Doc. 988 at 67-68. Ugochukwu further claims that Goldberg never discussed what he characterized as "the difficult nature" of predicting the case, nor did he address safety valve potential. Doc. 988 at 65. Goldberg testified to exactly the opposite. He stated that he visited Mr. Ugochukwu 7-8 times during representation. His affidavit and testimony indicate that he reviewed a significant amount of discovery pertaining to this case, both independently and directly with Ugochukwu. Goldberg did not recall a likelihood of success discussion, but rather a discussion of what the most problematic parts of the case against Ugochukwu were, and how to attack them. Doc. 988 at 7. Goldberg did not have a specific recollection of a conversation with Ugochukwu of any "partial success" scenarios but did recount at least one scenario at the hearing. Doc. 988 at 8. He further

3

testified that he typically does go over those scenarios with clients and is "sure" they did in this case. Doc. 988 at 8.

With respect to the guidelines, Goldberg recounted that he discussed them at length with Ugochukwu, reviewing several possibilities. Goldberg believed that Ugochukwu would begin at an offense level 36. Doc. 988 at 9. He also indicated that the government could and was likely seeking a major role enhancement with a potential upward bound of offense level 40. Doc. 988 at 10. With a guilty plea, acceptance of responsibility could take 3 points off. Goldberg reported that he went over these possibilities with Ugochukwu numerous times, and further indicated that he could not know for certain what a potential sentence could be because the Court could upwardly depart from the guidelines or apply the major role enhancement on its own. Ugochukwu recounted that Goldberg told him several things with respect to sentencing ranging from: he could get a maximum of 20 years; he could receive around 20 years; and he faced 20 years or in the area of 20 years regardless of whether he pled guilty or proceeded to trial. Goldberg testified that he never indicated that 20 years was the maximum, but rather that the possible sentence was in the basic area of 20 years. Goldberg indicated that he said that Ugochukwu could take a plea and still get close to 20 years, which he believed to be true. Doc. 988 at 44. Goldberg further recalled that he told Ugochukwu, from his past experience, the judge had recently upwardly departed from the guidelines in heroin cases, including cases with plea agreements.

With respect to plea negotiations, Goldberg testified that any discussions that they had regarding a possible plea agreement had to be initiated by him, and that Ugochukwu never was interested in a plea. In January of 2011, Goldberg received a call from Ugochukwu's brother asking why he was not pursuing a plea. In response to this call, Goldberg wrote a letter to

4

Ugochukwu dated January 28 indicating that he had never expressed "a desire to plead guilty" and that Goldberg was operating under the assumption that that position had not changed. In the letter, Goldberg highlighted potential consequences of a plea or guilty verdict as follows:

> At trial, I suspect that the government will attempt to prove your responsibility for more than 30 kgs. of heroin. They will also assert that you played a major role in the conspiracy. . .. If the government is successful, you, as we discussed, face an enormous amount of prison time. The guideline offense level for 10 to 30 kgs. of heroin is 36. The major role enhancement could also add points. The basic range would be in the area of twenty (20) years if we lose at trial.
>
> On the other hand, if you plead guilty, I may be able to negotiate a reduction from this level. A further reduction may be obtained if you were to render cooperation to the government which I know you are not interested in.
>
> You have never expressed an interest in pleading guilty or cooperating with the government I am writing this letter to get the matter of potential penalty on paper and out of the way while we prepare for trial.
>
> Please make your brother aware of your position as he seems to be uninformed as to your instructions to me. I am preparing to go forward with a trial unless and until I hear otherwise from you!

Ugochukwu Ex. 2.

Ugochukwu testified that what he told Goldberg "from the get-go is that [he was] not going to snitch on anybody." Doc. 988 at 67. Ugochukwu further testified, in contrast to Goldberg's testimony and his own exhibit, that he started asking about plea discussions in November or December of 2010. Doc. 988 at 61. In March of 2011, Goldberg received an email from the AUSA assigned to the case initiating a discussion of what a possible plea might look like. The email indicated that Ugochukwu would start at an offense level 36, but that the leadership role could be tinkered with in the event of a guilty plea. Further, additional levels could be on the table for acceptance and a potential proffer. Ugochukwu ex. 1. Goldberg testified that he brought the email to Ugochukwu and went through it with him. He explained that even though the government offered to tinker with the leadership role, it was still up to the judge. Doc.

5

988 at 17. Goldberg indicated that Ugochukwu said he was not interested, and Goldberg requested that he make a record of that on the document. Ugochukwu, possibly at Goldberg's recommendation, wrote "thanks but no thanks." Ugochukwu ex. 1. In contrast, Ugochukwu testified that Goldberg never explained the email. Ugochukwu stated that Goldberg indicated that he would not personally take such an offer. Thereafter, Ugochukwu alleges he wrote on the email without ever reading it or discussing its contents.

Ugochukwu claims that if he were properly informed of the potential sentence, he would have taken a plea the suggested his sentence would be 20 years. Goldberg maintains that at no point did Ugochukwu ever indicate that he was willing to take a plea, and that Goldberg was never authorized to enter plea negotiations. Further, Goldberg explained that the March email from the AUSA was not a formal plea offer but just a starting point of the discussion. In a letter to Goldberg, Ugochukwu stated in part:

> All my life, I have never go about looking for a fight but I have never run away from it either. I know what is at stake, *twenty years or more of my freedom*, if I loose (sic), but am willing to go all the way to Supreme Court if I have to.
>
> In my country, we say "no shaking" meaning I am not afraid. So whatever the agents and the prosecutors are looking from me, they are going to get it. I am down for whatever, I do hope that you are as excited as I am to throw down.

Gov. Ex. B (emphasis added).

Evidence was also presented at the hearing indicating that, as Goldberg put it, Ugochukwu was heavily involved in his own defense. He sent Goldberg numerous letters discussing caselaw and potential arguments to make in a motion to suppress. He also sent Goldberg a list of potential jury questions. Ugochukwu stated that this was all done by people that he characterized as "jailhouse lawyers" and that he merely copied their work into his letters. The government also provided several affidavits that Ugochukwu provided in his initial motion

6

to vacate his sentence. They were written by Ugochukwu, his associates, friends, and family, detailing certain elements of the initial case. Some of the claims in the affidavits include Goldberg telling Ugochukwu's brother that his judge does not like foreigners and that he faced only a maximum of 20 years; that a detective offered false testimony at the trial; that one of Ugochukwu's witnesses was offered $10,000 to testify against him and threatened if she did not cooperate; that parts of the trial transcript that the judge had requested to be put on the record were not; that Ugochukwu's wife was threatened when attempting to get a visa at the U.S. consulate in Nigeria; that Richard Lanier,[1] while incarcerated, had attempted an elaborate scheme to fabricate evidence against Ugochukwu in support of his own proffer; and that an associate was threated with passport fraud charges if he did not cooperate against Ugochukwu.

### III. Applicable Law and Analysis

The Sixth Amendment provides accused persons with a right to "effective assistance of counsel" in criminal proceedings. *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Frye*, 566 U.S. at 148). *Strickland* articulated a two-prong ineffective assistance of counsel test that is applicable in this context. *See Lafler*, 566 U.S. at 163-64; see also *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The first prong requires that a defendant show "that counsel's representation fell below an objective standard of reasonableness," otherwise known as the deficient performance test. *Strickland*, 466 U.S. at 688. The second prong, sometimes referred to as the prejudice test, requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695.

---

[1] Lanier was indicted as one of Ugochukwu's co-conspirators. Lanier pled guilty, agreed to cooperate with the Government, and offered testimony against Ugochukwu during trial.

Reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." *Id.* To succeed, a defendant must make a sufficient showing of both components of the test. *Strickland,* 466 U.S. at 697.

"The objective standard of reasonableness is a highly deferential one and includes a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. DeGroat*, 102 F. App'x. 956, 959 (6th Cir. 2004) (quoting *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) (internal quotations omitted)). To overcome this strong presumption, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. See also *Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("[w]ithout evidence that [counsel] gave incorrect advice or evidence that he failed to give material advice, [the defendant] cannot establish that his performance was deficient.") (citing *Titlow v. Burt*, 680 F.3d 577, 595 (6th Cir. 2012) (Batchelder, C.J., dissenting)). A court should judge reasonableness in this context "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* In determining what is reasonable, a court should keep in mind that "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt*, 571 U.S. at 24. (citing *Mickens v. Taylo*r, 535 U.S. 162, 171 (2002)).

Under *Strickland*, a defendant has the additional burden of showing that counsel's deficient performance resulted in prejudice. *See Lafler*, 566 U.S at 163. "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). In the context of plea agreements, the defendant must show "(1) the plea offer would have been presented to the court, (2) the court would have accepted it, and (3)

8

his sentence would have been less severe than the sentence imposed." *Ugochukwu v. United States*, 2018 U.S. App. LEXIS 10756, at *9-10 (6th Cir. April 26, 2018) (citing *Lafler*, 566 U.S. at 164).

Goldberg offered clear and articulate testimony regarding his conduct that occurred during the pretrial stages of this matter. His testimony offered a coherent and consistent view of the defense that Ugochukwu desired – namely, a trial. Moreover, Goldberg's testimony was supported by documentary evidence. With respect to the discussion of the possible guideline ranges that Ugochukwu faced, Goldberg noted that he had made specific marks on the guideline chart to facilitate his review with his client. Goldberg's testimony is further supported by the language Ugochukwu used in a letter written to him: "I know what is at stake, *20 years or more*, of my freedom if I lose, but I am willing to go all the way to the Supreme Court if I have to." Gov. Ex. B; also Doc. 988 at 36.

In contrast, Ugochukwu's testimony lacks any credibility. Ugochukwu describes a defense that was thorough and adequate in every way *except* the precise issue before the Court. Ugochukwu asserts that Goldberg discussed every aspect of his case with him except a plea agreement and the sentencing guidelines. Ugochukwu further admits that he sent numerous detailed letters to Goldberg on a host of legal issues ranging from the wiretap statute to suppression issues. Ugochukwu asserts that he learned these things from "jailhouse lawyers." Ugochukwu further asserts, once again, that he discussed every aspect of his case with these jailhouse lawyers except for sentencing issues.

Having had the opportunity to observe both witnesses on the stand during their testimony, the Court unequivocally finds that Goldberg gave credible testimony while Ugochukwu did not. Beyond the documentary evidence that overwhelmingly supported Goldberg's version of the

9

parties' relationship, the Court was able to observe the demeanor, posture, and body language of the witnesses. Those observations only served to support the view that Ugochukwu was not honest during his testimony.

The Court's conclusion is further bolstered by its firsthand experience presiding over this matter from indictment to sentencing to post-trial motions to the instant motion. Ugochukwu routinely appeared before the Court and consistently expressed his intent to test the Government's case at trial. At no point in time did he express any interest in a plea agreement, nor did he express any concern over Goldberg's representation. It was not until Ugochukwu received a sentence he did not like that he found fault with Goldberg.

Ugochukwu's testimony herein appears to be little more than a continuation of his actions following sentencing – namely *creating* any narrative that would assist him. Without any credible support, he asserted: that his wife was threatened with asset seizure unless she cooperated against him; that the Government's lead agent offered a witness $10,000 to testify against him; that Goldberg told him the Government would grant his wife a visa if he pled guilty; and that Lanier had confided to a fellow prisoner that he falsified information to offer against Ugochukwu. It is interesting to note that during this evidentiary hearing, Ugochukwu admitted that he sold heroin to Lanier.[2] Doc. 988 at 87-88. This admission only serves to undercut that Lanier needed to somehow fabricate evidence in order to testify against Ugochukwu.

The evidentiary hearing herein served only as a reminder that Ugochukwu will go to any length in an attempt to evade his lengthy sentence. Having found that Goldberg was a credible witness, it follows that Ugochukwu's ineffective assistance of counsel claim must fail.

**IV. Conclusion**

---

[2] At the same time, Ugochukwu admits that he never told Goldberg that he had sold heroin to Lanier.

For the foregoing reasons, Defendant Christopher Ugochukwu's Motion to Vacate is DENIED.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATED: May 11, 2020                    */s/ John R. Adams*_____
                                       John R. Adams
                                       UNITED STATES DISTRICT JUDGE